## BENOIST & HACKNEY vs. SITER, PRICE & CO.

A negotiable note given by Blow to Siter, Price & Co., was placed in the hands of one Anderson for collection—by him it was transferred to B. & H. to whom Anderson was largely indebted, and the amount placed by them, to Anderson's credit, upon their books. Held—that notice to B. & H. at *the time they gave the credit* to Anderson, that the note belonged to S. P. & Co, is sufficient to make them liable for the amount and interest to S. P. & Co.

### ERROR to St. Louis Circuit Court.

SPALDING & TIFFANY, for Appellants.

#### POINTS AND AUTHORITIES.

I. The court erred in giving the instruction asked for by the plaintiffs below.

1. That instruction assumes that the defendants knew that the note in question belonged to plaintiffs; and that they knew this at the time they credited Anderson with the proceeds of said discounted note.

2. It assumes that said note at the time it was discounted, belonged to the plaintiffs.

3. It places the point of protection to the defendants below at the passing to the credit of Anderson, the proceeds of the note on the books of the defendants; whereas it should have been at the payment over of such proceeds. For if they took the note and gave Anderson the proceeds of the discount, they are not liable to plaintiffs even though they should have been notified of plaintiff's ownership of the note immediately after, and before the defendants made their entries in their books.

4. The instruction is involved, and calculated to mislead the jury.

5. It authorizes a recovery by plaintiffs if the defendants *ever* knew that the note had belonged to plaintiffs, *no matter at what time it belonged to them, provided they knew at the time they credited Anderson with the amount that said note did not belong to him.*

II. The instruction asked by defendants should have been given. It submitted to the jury the questions of fact, and confined the knowledge of the defendants of the plaintiff's ownership of the note which should make them liable, *at the proper point*, to-wit, *before* or *at the time of accounting to Anderson for the proceeds of the note.*

III. The two instructions are not identical, as is apparent in comparing them.

IV. If they were substantially of the same effect, yet as they are circumstantially different, the latter should have been given, as it was the

law of the case, and the court by rejecting it, probably prejudiced the case before the jury.

V. A negotiable note or bill, passed by the holders before due to a bona fide purchaser, without any notice of the holders want of title, belongs to such purchaser, even though the holder might have no interest in it whatever. Chitty on Bills, 222, 221 ; Story on Bills 209-10.

VI. The motion for a new trial ought to have been sustained.

GAMBLE & BATES, for Appellee.

### POINTS AND AUTHORITIES.

I. The instruction given on the part of the appellees was lawful and proper, in view of the testimony in the cause, and,

II. That there was no error committed in refusing the instruction moved on the part of L. A. Benoist & Co.

1. That the instruction given was right, seems susceptible of the plainest kind of demonstration. The matters of fact being submitted to the jury, they have found that L. A. Benoist & Co. at the time they gave the credit to Anderson—that is when they discounted the note—"knew that the note was at the property of Anderson," and at the time that they received the proceeds, "knew that said note belonged to the plaintiffs." If with a knowledge of these facts, they be not liable to this action, it must be because they could lawfully buy a note from a man who *they knew* did not own it, and lawfully receive and keep to their own use, money which they knew at the time belonged to other people.

That there was sufficient testimony in the cause on which to base the instruction is equally clear. And first it is plain from the testimony of several witnesses, that L. A. Benoist & Co. knew that Anderson was a collecting agent for Siter, Price & Co., Anderson himself testifies that he told them so ; and that in point of fact, he did not *sell* them the note, but lodged it in their bank *for collection*. When due, Anderson, avowedly as the agent of Siter, Price & Co. still controlled it: As such he held negotiations with the drawers and gave them time, while L. A. Benoist & Co. did not *act* as owners, nor treat Siter, Price & Co. as *their* endorsers. If then, they had really claimed to be owners, and acted as such, if not constrained by a prudent regard for their own interest, at least, mercantile usage, good faith and common fairness to the other parties to the transaction, would have required them to deny Anderson's agency, to protest the note for non-payment, and give notice to the endorsers in Philadelphia. If that had been done,

Siter, Price & Co. would have been warned that their agent instead of collecting their note had faithlessly sold it, and being warned, they as business men would have promptly looked after their own interests and might have saved not only the amount of that note, but some thousands more now lost in Anderson's bankruptcy.

Again—the note was never *assigned* to any body. The endorsements of Siter, Price & Co. and of John J. Anderson, are still *in blank*. There is nothing in full on the back of the note but the *receipt of L. A. Benoist & Co.* Now a *blank* endorsement is not *per se* a transfer or assignment; it is but a *power*. The payer when he takes it up may write a receipt over the name; and before payment, a *bona fide* holder may fill it up to himself. The *blanks* were not filled by either Anderson, or L. A. Benoist &. Co. Neither of them pretended to be a *bona fide* holder. Nobody questioned the title of Siter, Price & Co. until Anderson's downfall was seen to be inevitable, and then there was a scramble for his assets.

And again—it is in proof that Anderson had extensive dealings with L. A. Benoist & Co. and was largely their debtor. Their busines relations were constant and confidential, and hence with the sagacity belonging to the trade of banking and brokerage, they must have understood his pecuniary situation, and have foreseen his bankruptcy. In this view it is not hard to account for the fact, that when he left the note *for collection*, they thought fit, (unknown to him and as he swears against his intention) to pass the note on their books, through the forms of a regular discount, and without paying a dollar, credit the proceeds to his account, against a debt then dangerously large, and now hopeless of payment. This nominal discount of the note and giving credit to Anderson's account, it is apparent was the exclusive and one sided act of L. A. Benoist & Co. Anderson testifies that it was not *his* intention to have it so, and that he had no knowledge of the fact until long afterwards. But even if he had concurred in all that was done, still the legal and honest result would remain the same. For Benoist having knowledge of the facts as stated in the instruction, any bargain between him and Anderson, whereby Siter, Price & Co. would lose title to their note, and be deprived of money honestly theirs, would be a fraud too palpable and gross for the law to tolerate. They could not be allowed to cheat Siter, Price & Co. out of their money, by any private arrangement between themselves, and this would undoubtedly be the case if Benoist knowing the facts, be allowed to keep the money.

Anderson having the *fiduciary* possession of the note, with a blank

endorsement (which is but a power to transfer) might abuse his trust dan pervert his power by making a valid transfer to a *bona fide* purchaser for a valuable consideration *without notice*. But any other transfer would be fraudulent and void.

2. The instruction prayed by the defendants was well refused.

The main principle involved in the refused instructions—i. e, the knowledge by Benoist, that Anderson *did not*, and that Siter, Price & Co. *did*, own the note—is identical with the instruction given, and therefore need not be repeated to the jury.

But besides this, it was rightly refused, because it contained expressions ingeniously interwoven which were calculated to mislead the jury. For instance, the instruction assumes that Benoist & Co. were not liable unless it appear to the jury that the note was the property of the plaintiffs, "and that the defendants had *notice* therefore *before* said Anderson *received* the proceeds of said discount." If the word *notice* was designed to have a meaning more extended than, or different from *knowledge*, it was calculated to mislead and was wrong. The word *before* would alone make the instruction illegal; if they knew the fact *at the time* of the discount and credit, as imported in the instruction given, "it is enough to bar their claim of the money." "Before Anderson *received* the proceeds. This phrase is deceptive and might well lead the jury to believe that it was an established fact that Anderson had in reality *received the proceeds*, which we think is plainly disproved.

If it be contended at the hearing, that the verdict ought to have been set aside upon the facts, I have only to say that the only important question of fact before the jury, was Benoist's knowledge of the condition and ownership of the note, and the bill of exceptions shows that there was ample testimony on that point, which I shall not restate here, as I suppose it has been sufficiently referred to under the first head.

As to the amount of damages, I suppose the amount is right, but if it appear that any error has crept in, by miscalculation of interest or the like, that can be corrected by a *remittitur* of the excess.

McBRIDE, J., delivered the opinion of the court.

Siter, Price & Company, plaintiffs below, brought an action in assumpsit against Benoist & Hackney, on the common money counts, in the St. Louis court of common pleas, returnable to the November term, 1842. The defendants pleaded non-assumpsit, and the cause was tried on that issue, on the 3d October, 1844, when a verdict and judgment

were given in favor of the plaintiffs for $2688 98, from which the defendants appealed to this court.

A motion was made in the court below, to set aside the verdict, because it was against evidence, against law, against the weight of evidence; because the court gave improper instructions and refused to give instructions asked for by the defendants; because the damages were excessive and not warranted by the evidence, and that the court improperly excluded evidence offered by the defendants. This motion was overruled by the court and the defendants excepted.

It appeared in evidence on the trial in the circuit court, that Benoist & Hackney were exchange brokers in large business in St. Louis, with whom one John J. Anderson, at that time a merchant in St. Louis, was in the daily habit of business in their line, and of getting notes discounted; that on the 18th January 1842, said Aderson got discounted with the defendants a note of the following tenor:

"$2437 96

"PHILADELPHIA, Jan. 13, 1841.

"Thirteen months after date, we promise to pay to the order of Siter, Price & Co. twenty-four hundred and thirty-seven dollars 96 cents, with the current rate of exchange on Philadelphia, negotiable and payablo at the office of the St. Louis Perpetual Insurance Company, without defalcation for value received.     P. E. BLOW & Co."

On which were the following endorsements :—

"No. 8163.
P. E. Blow & Co. $2437 96.
Phil. Exchange due 13-16 Feb. 1842.
Siter, Price & Co.
John J. Anderson.
Rec'd. Payment,     L. A. Benoist & Co."

The defendants' clerks testified that the note was discounted by defendants, was so marked, and entries of the discount thereof were made in the usual name in their books, and that said Anderson received the proceeds thereof, which was about on month before the note became due. It was also in evidence that Anderson before that time had got notes, payable to the same payees and endorsed by them, discounted at said defendant's office, and at other places in St. Louis. That the proceeds of said note were paid to said Anderson, at the time it was discounted by entering in his bank book, which was balanced several times after the credit had been so entered; that Anderson about this time had largely overdrawn his credits.

John J. Anderson testified that the said note was the property of the

plaintiffs, and that he was the agent of the plaintiffs for collection, and that the said note was left by him with the defendants for collection, and that he thought they knew at the time, that it belonged to the plaintiffs, though he could not say that he told them so—that he had written to Mr. Darby that said note was discounted, but afterwards told him that it was not discounted.　He further stated that there were two other notes, having the same makers, payees and endorsers, that had been discounted by the defendants, though he had forgotton that fact; and that he did not remember of ever having got other notes belonging to Siter, Price & Co. discounted at other places.

It was also in proof, that in the fall of 1841, and the beginning of 1842, Siter, Price & Co. sent a large number of notes to Anderson for collection, some of which he collected, and others he got discounted. That Anderson's books were kept irregularly, and the cash account would not balance by one hundred thousand dollars, and could not be corrected or explained—that Anderson failed in May 1842, and that for some months prior he was hard pressed for money, and occasionally raised money by getting the notes of Siter, Price & Co., which he held as agent, discounted at different places, and then entered them in his *bills payable,* to be provided for by him as they matured.

On this state of evidence, the plaintiffs asked the court to give the jury the following instruction:

"If the jury believe from the evidence that the defendants received the proceeds of the note of P. E. Blow & Co. which has been given in evidence, and that they knew that the said note belonged to the plaintiffs; they are answerable for the amount received by them, notwithstanding the defendants may have passed the amount thereof on their books to the credit of Anderson, if the defendants knew at the time of making such credit, that the note was not the property of Anderson."

Which the court gave and the defendants excepted; thereupon the defendants prayed the following instruction:

"If the jury find from the evidence, that the note given in evidence was endorsed by the plaintiffs and John J. Anderson, and was discounted by the defendants for said Anderson—that he was paid the proceeds or was credited therewith on his account with the defendants, the plaintiffs are not entitled to recover on account of any money received by defendants in payment of said note or any part thereof, unless it appears to the satisfaction of the jury that said note was the property of the plaintiffs, and the defendants had notice thereof, before said Anderson received the proceeds of said discount."

Benoist & Hackney vs. Siter, Price & Co.

Which the court refused to give, and the defendants excepted.

Did the court of common pleas err in giving the instruction prayed for by the plaintiffs, and in refusing the one asked by the defendants? It is conceded on the part of defendants, that to protect them against the claim of Siter, Price & Co. they must have been *bona fide* purchasers of the note of P. E. Blow & Co. from Anderson—without notice—and have paid Anderson the proceeds thereof. But if they had notice of the ownership of Siter, Price & Co., at what period must they have obtained it to charge them in this action? It need not have been at the time the note was discounted, but if the fact came to their knowledge at any period prior to the payment of the proceeds to Anderson, it would be sufficient, as then the defendants would have it in their power to save themselves from any loss arising out of the faithless conduct of the plaintiff's agent. The instruction given fixes the notice at a period of time as favorable to the defendants as they could reasonably desire, that is, when the credit was made to Anderson on the defendant's books.

Prior to this time, the defendants had incurred no liability to Anderson, for the proceeds of the note on Blow & Co. and had assumed no relation to that note by which they would have been affected by the question of ownership.

We are of opinion that the court committed no error in giving the plaintiff's instruction.

Did the court err in refusing to give the instructions asked by the defendants which they say is not identical with the one given, as is apparent from comparing them; but " if they were substantially of the same effect, yet as they are circumstantially different, the latter should have been given as it was the law of the case, and the court by rejecting it probably prejudiced the case before the jury." The two intructions are substantially the same, and the court might have given them both without committing error; but as the one given embraces the same principle, the refusal to give the other is no cause for reversing the judgment.

The other grounds taken for a new trial are not sufficient. If the plaintiffs have a right to recover at all, they were entitled to a verdict for the full amount of the note of P. E. Blow & Co. with interest, &c. There was evidence before the jury from which they might have found, as they did, and this court will not undertake to weigh the evidence, to see if the jury may not possibly have committed an error, or as readily have found a contrary verdict.

The other judges concurring, the judgment of the court of common pleas is affirmed.